[L. A. No. 17355. In Bank.—February 20, 1941.]

MERTON L. MILLER, Respondent, v. CHARLES J. Mc-COLGAN, as Franchise Tax Commissioner, etc., Appellant.

Earl Warren, Attorney-General, H. H. Linney, James J. Arditto and Valentine Brookes, Deputies Attorney-General, for Appellant.

Claude I. Parker, Bayley Kohlmeier and Stuart T. Baron for Respondent.

CURTIS, J.—This is an appeal by the defendant as Franchise Tax Commissioner of the State of California from a judgment directing a refund of that part of the income tax for 1935 theretofore paid under protest by plaintiff.

There is presented here for our consideration a single question of law, to wit: Under section 25 (a) of the California Personal Income Tax Act of 1935 [Deering's Gen. Laws, 1937, Act 8494], is plaintiff entitled to a credit against his California tax in the amount of the tax paid by him for said year on the same income to the Philippine Government?

The facts upon which this appeal is based were stipulated and are substantially as follows: Plaintiff is a resident of the State of California. During the year 1935 plaintiff owned stock in the Balatoc Mining Company, a Philippine corporation, engaged in the mining business. All of the properties and activities of that company were in the Philippines, and it did not carry on any business in California. During the year 1935 plaintiff received dividends from the Balatoc Mining Company in the amount of $104,130.50, of which the sum of $29,055, accrued and payable as dividends in 1934, was eliminated from consideration here, and the balance of said dividends, or $75,075.50, was taxable and was taxed by California.

During the same year 1935 plaintiff sold certain stock of the Philippine mining corporation for a profit. The sales were made in the Philippines, and the certificates representing these stocks were delivered by plaintiff's agent in the Philippines to brokers in the Philippines, and after the sale thereof the proceeds received were delivered to plaintiff's agent in the Philippines and were by him transmitted to plaintiff.

During the entire year 1935 there was in full force and effect in the Philippines a net income tax law which imposed a tax upon the entire net income of residents of the Philippines and also upon the entire net income of nonresidents of the Philippines derived from sources within the Philippines. Under the income tax law of the Philippines, as it is interpreted by their taxing officials, dividends paid by Philippine corporations to nonresident stockholders and gains from sales of stocks in the Philippines by nonresident aliens constitute income derived from sources within the Philippines, within the meaning of their tax law, and are subject to their income tax. Furthermore, it has been held by the Supreme Court of the Philippines that dividends paid by Philippine corporations to nonresident stockholders are subject to the Philippine income tax. (*Manila Gas Corp.* v. *The Collector of Internal Revenue,* Supreme Court Decision No. 42780, Jan. 17, 1936 [62 P. I. ——].)

Pursuant to the law of the Philippines, plaintiff filed an income tax return with the Collector of Internal Revenue of the Philippines, in which he reported the dividends received by him from the Balatoc Mining Company and the gains derived by him from the sale of stocks in the Philippines, and

paid a tax thereon to the Philippines for the year 1935 in an amount of $6,638.54.

Plaintiff as a resident of California filed his income tax return for the year 1935 with the Franchise Tax Commissioner of the State of California and included in his return the dividend received by him from the Balatoc Mining Company in the sum of $75,075.50 and the gain derived from the sale of stock in the Philippines in the sum of $7,830.72. It is agreed that the amount of $3,434.99 of the $6,638.54 paid by plaintiff as income tax to the Philippines for the year 1935 was paid upon income which was also included in plaintiff's taxable income for 1935 for California personal income tax purposes. Pursuant to the terms of section 25 (a) of the California Personal Income Tax Act, plaintiff claimed a credit on his California return for the taxes paid by him to the Philippine Government on the same income. In computing plaintiff's tax liability to California for the year 1935, defendant, as Franchise Tax Commissioner, disallowed the deduction and, as a result thereof and after protest by plaintiff, assessed a deficiency tax against plaintiff. The latter paid the deficiency tax and brought this action to secure a refund. It was agreed by the parties that if plaintiff was entitled to a credit for income taxes paid by him to the Philippines upon income which was also included in plaintiff's income tax return for California, the amount of that credit was $3,434.99. The trial court concluded that the credit should have been allowed, and defendant brings this appeal from the judgment rendered in favor of plaintiff.

Section 25 (a) of the California Personal Income Tax Act of 1935 [Deering's Gen. Laws, 1937, Act 8494], provided:

"Whenever a resident taxpayer of this State has become liable to income tax to another State or country upon his net income, or any part thereof, for the taxable year, derived from sources without this State, and subject to taxation under this act, the amount of income tax payable by him under this act shall be credited with the amount of income tax so paid by him to such other State or country, but such credit shall not exceed such proportion of the tax payable under this act as the income subject to tax in such other State or country bears to the taxpayer's entire income upon which the tax is imposed by this act."

The important words are "income . . . derived from sources without this State," for if the income was derived from sources *within this state,* the credit provision is inapplicable, and respondent is not entitled to recover.

Appellant contends (a) that the source of the dividends received by respondent in California was the stock itself and therefore the income was not from sources without this state; and (b) that the source of capital gain from the sale of the shares of stock was also in California and therefore no credit was permissible in respect to the tax paid to the Philippine Government. In support of this position appellant relies primarily on the common law doctrine of *mobilia sequuntur personam,* a well-established guiding principle in the taxation of intangibles.

In our approach to the problem presented here let us first consider the nature of this property—corporate stock—and the status of corporations and shareholders. ■ It is fundamental, of course, that the corporation has a personality distinct from that of its shareholders, and that the latter neither own the corporate property nor the corporate earnings. The shareholder simply has an expectancy in each, and he becomes the owner of a portion of each only when the corporation is liquidated by action of the directors or when a portion of the corporation's earnings is segregated and set aside for dividend payments on action of the directors in declaring a dividend. This well-settled proposition was amplified in *Rhode Island Hospital Trust Co.* v. *Doughton,* 270 U. S. 69, 81 [46 Sup. Ct. 256, 70 L. Ed. 475], wherein appears the following cogent language: "The owner of the shares of stock in a company is not the owner of the corporation's property. He has a right to his share in the earnings of the corporation, as they may be declared in dividends arising from the use of all its property. In the dissolution of the corporation he may take his proportionate share in what is left, after all the debts of the corporation have been paid and the assets are divided in accordance with the law of its creation. But he does not own the corporate property." Since the shareholder by reason of his stockholding is entitled to share in any dividends which may be declared, it logically follows, as appellant urges, that the source of dividends is the stock, because income which comes to one solely because of ownership of property has a source in that property.

At this point it is pertinent to draw a distinction between the *immediate* source of the income with respect to a particular recipient, and what might be called the *ultimate* source of the same income. For example, the Balatoc Mining Company owns its mines and the machinery and materials therein. Its legal ownership is complete. Respondent owns stock in this corporation, which stock represents a number of intangible rights in him legally distinct from the ownership rights of the corporation in the mine and supplies. When we think of source, it seems safe to say that the corporate income has its source in the mining and management process. When the same income reaches respondent as dividends, it is arguable that its source as well is to be found in the corporate activities. However, the dividends, so far as respondent is concerned, represent a yield of the wealth invested in his legally recognized property interest, the shares of stock. Thus, to respondent the source of the income is the corporate stock, the legally created property interest owned by respondent and without which he would not receive this benefit. The shares of stock are the *immediate* source of the income *to the recipient*, though the *ultimate* source is to be found one or more steps back in the process where the new wealth was first called into existence. It is this fundamental differentiation which underlies the well-established principle that "the property of the shareholders in their respective shares is distinct from the corporate property, franchises and capital stock, and may be separately taxed (*Van Allen* v. *Assessors,* 3 Wall. 573, 584 [18 L. Ed. 229] ; *Farrington* v. *Tennessee,* 95 U. S. 679, 687 [24 L. Ed. 558] ; *Tennessee* v. *Whitworth,* 117 U. S. 129, 136, 137 [6 Sup. Ct. 645, 29 L. Ed. 830] ; *New Orleans* v. *Houston,* 119 U. S. 265, 277 [7 Sup. Ct. 198, 30 L. Ed. 411].) '' (*Hawley* v. *Malden,* 232 U. S. 1, 9 [34 Sup. Ct. 201, 58 L. Ed. 477].)

In harmony with this line of decision, it appears that there is in the beginning an income to the corporation, and that part of such income in turn is passed on to the shareholder in the form of dividends. As such it represents in law an income to the shareholder quite distinct from the income to the corporation. Therefore, in the absence of an express statutory mandate to the contrary, it logically follows that the source of the income to the shareholder (the dividends) is the corporate stock.

Respondent contends that the activities, the property and the earnings of the corporation, and not the stock, are the source of dividends, and in this connection he cites the Philippine case of *Manila Gas Corporation* v. *The Collector of Internal Revenue, supra,* as establishing that his income was from sources within the Philippines. However, it appears from the opinions in that case that the Philippine statute expressly declared that interest on bonds (intangibles) paid by corporations resident in the Philippines was taxable. Further, it may be gleaned from the Philippine court's opinions that prior to the enactment of the statute there concerned that court had held that interest paid by Philippine residents to nonresidents was not from sources within the Philippines.

Also, it should be noted that the federal practice, which allows American residents a credit for income taxes paid to foreign countries on dividends, is not applicable here because it is dictated by specific statutory provisions. And *Lord Forres* v. *Commissioner,* 25 B. T. A. 154, *Bence* v. *United States,* 18 Fed. Supp. 848, and *Helvering* v. *Stockholms Enskilda Bank,* 293 U. S. 84 [55 Sup. Ct. 50, 79 L. Ed. 211], relied on by respondent, all involved the construction of section 217 of the Federal Revenue Act [26 U. S. C. A., Act 1926, p. 170], which expressly declares that dividends paid to nonresidents by corporations doing business in the United States are derived from sources within this country. The courts had no alternative but to apply the statute as they did unless they were to hold the statute unconstitutional. This they could not do in view of the principles enunciated in *Burnet* v. *Brooks,* 288 U. S. 378 [53 Sup. Ct. 457, 77 L. Ed. 844, 86 A. L. R. 747], to the effect that Congress had the power to enact such a statute as construed and applied to the property in question. These cases cited by respondent turned on constitutional considerations of the scope of the taxing power of the federal government and because of the distinct differentiation in legal principles involved there, those decisions have no bearing on our determination of the present question, whose pivotal point centers on the proper construction of the precise language employed in the statute subject of interpretation.

Having fixed upon the source of the particular income as the corporate stock, the next task is to assign to this

source a taxable situs. Under the doctrine of *mobilia sequuntur personam*, shares of stock in a corporation have their situs or location in the state or country wherein their owner resides, unless they have acquired a business situs elsewhere. The possibilities of this case being affected by the doctrine of business situs will be discussed later in this opinion.

In 1935 when the Income Tax Act was enacted by our legislature the courts of California and the federal courts had declared that the taxation of intangibles was subject to the rule of *mobilia sequuntur personam*. (*First Nat. Bank* v. *Maine*, (1932) 284 U. S. 312 [52 Sup. Ct. 174, 76 L. Ed. 313] ; *Beidler* v. *South Carolina Tax Com.*, (1930) 282 U. S. 1 [51 Sup. Ct. 54, 75 L. Ed. 131] ; *Baldwin* v. *Missouri*, (1930) 281 U. S. 586 [50 Sup. Ct. 436, 74 L. Ed. 1056] ; *Farmers Loan & Trust Co.* v. *Minn.*, (1930) 280 U. S. 204 [50 Sup. Ct. 98, 74 L. Ed. 371] ; *Safe Deposit & Trust Co.* v. *Virginia*, (1929) 280 U. S. 83 [50 Sup. Ct. 59, 74 L. Ed. 180] ; *Blodgett* v. *Silberman*, (1928) 277 U. S. 1 [48 Sup. Ct. 410, 72 L. Ed. 749] ; *Estate of McCreery*, (1934) 220 Cal. 26 [29 Pac. (2d) 186] ; *Westinghouse Elec. & Mfg. Co.* v. *County of Los Angeles*, (1922) 188 Cal. 491 [205 Pac. 1076] ; *Hinckley* v. *County of San Diego*, (1920) 49 Cal. App. 668 [194 Pac. 77].) The principle is well established that legislation should be construed in the light of court decisions existing at the time of its enactment.

Moreover, long prior to the adoption of our Income Tax Act of 1935 the Supreme Court of the State of Wisconsin in the case of *State ex rel. Manitowoc Gas Co.* v. *Wisconsin Tax Commr.*, 161 Wis. 111 [152 N. W. 848], had held as a matter of statutory construction that interest on bonds paid by residents to nonresidents was not income from sources within Wisconsin and consequently could not be taxed by that state. That case involved construction of the language of that part of the Income Tax Act of 1911 which provided for taxation of nonresidents "upon such income as is derived from sources within the state or within its jurisdiction" and in concluding that the assessment against nonresident bondholders was invalid, the court said at page 850:

" . . . The situs of a bond remains at the domicile of the bondholder. So the interest in question did not as to nonresident bondholders, constitute an income derived from sources within the state. . . . "

If the rule of *mobilia* is applicable to income from bonds, it necessarily is equally applicable to income from stock. So it may be said that the situs of a share of stock is at the residence or domicile of the owner (*First Nat. Bank* v. *Maine, supra*).

In support of his contention that the earnings and property of the corporation are the source of dividends, respondent cites the later Wisconsin case of *State ex rel. Froedtert, G. & M. Co.* v. *Tax Com.*, 221 Wis. 225 [265 N. W. 672, 267 N. W. 52, 104 A. L. R. 1478], which involved the application and validity of the Privilege Dividend Tax of that state. Wisconsin desired to share with nonresidents their dividends from corporations deriving earnings and profits from Wisconsin. In *Newport Co.* v. *Tax Commr.*, 219 Wis. 293 [261 N. W. 884, 100 A. L. R. 1204], *certiorari* denied, 297 U. S. 720 [56 Sup. Ct. 598, 80 L. Ed. 1004], the Wisconsin Supreme Court held that income from stock owned by a nonresident corporation had its source at the domicile of the owner. Concluding that an income tax on dividends paid to nonresidents by Wisconsin corporations would be held invalid, Wisconsin in 1935 imposed a tax on corporations doing business in Wisconsin for the privilege of paying dividends to nonresidents to the extent the dividends were paid from income earned by the corporations in Wisconsin. In the Froedtert case, wherein suit was brought to procure a declaratory judgment as to the constitutionality of the Privilege Dividend Tax statute, this tax was upheld, but the reason assigned was that the tax did not purport to be an income tax, or in any way to be a tax upon the dividend of the shareholder, but was an excise tax "for the privilege of declaring and receiving dividends out of income derived from property located and business transacted in this state." Then in *J. C. Penney Co.* v. *Tax Com.*, 233 Wis. 286 [289 N. W. 677, 126 A. L. R. 1333], when the question of applicability of this tax statute to a locally licensed foreign corporation came before the Supreme Court of Wisconsin, it was held that under those circumstances the statute ran afoul of the due process clause. This case was then taken to the Supreme Court of the United States on the sole question of whether or not the Wisconsin Privilege Dividend Tax offended the Fourteenth Amendment of the Constitution. That court in its decision of December 16, 1940, 311 U. S. 435 (85 L. Ed. 222,

61 Sup. Ct. Rep. 246), quite properly recognized the logic of the proposition that a foreign corporation admitted to do business in Wisconsin should be subject to the same burdens and liabilities as is a similar Wisconsin corporation, and because the "taxing power exerted by the state" of Wisconsin bore "a fiscal relation to protection, opportunities and benefits given by the (said) state," this statute was held constitutional as being within the confines of the due process clause.

Careful examination of these Wisconsin cases reveals that the basis of the Froedtert and Penney decisions was constitutional considerations of the Privilege Dividend Tax, an excise tax on corporate earnings as distinguished from a tax on the income of the shareholder, and the question of local source of income as related to taxable situs was disregarded therein. In the instant case we have the definite problem of statutory interpretation, and in this connection it is particularly significant that the two Wisconsin cases based on the proper construction of phraseology practically identical with that now under consideration here—*State ex rel. Manitowoc Gas Co.* v. *Wisconsin Tax Commr., supra,* and *Newport Co.* v. *Wisconsin Tax Commr., supra*—applied the rule of *mobilia* to income taxation and held that the place in which the intangibles had their taxable situs was also the place in which the income therefrom had its source.

In support of his argument that the source of dividend income is the place where the corporation earns its profits and carries on its business, respondent also cites the recent case of *Union Electric Company of Missouri* v. *Coale,* (Mo.) 146 S. W. (2d) 631, wherein it was held that dividends received by a domestic corporation from a foreign corporation not doing business in Missouri was not income "from sources in this state (Missouri)" within the meaning of the Missouri income tax law. However, we note an important distinction present in the Missouri decision which prevents it from being completely analogous to the instant case. The issue in the Missouri case was whether certain income was taxable, and the Supreme Court of Missouri held that the point must be strictly construed against the government. Apparently, this rule of construction was a governing factor in the conclusion reached. ▇ In the case at bar the provision allowing a credit (sec. 25 [a]) is in effect an exemption from liability for a tax already determined and admittedly valid, and such

statute must be strictly construed against the taxpayer (*The Pacific Co., Ltd.,* v. *Johnson,* 212 Cal. 148 [298 Pac. 489], affirmed in 285 U. S. 480 [52 Sup. Ct. 424, 76 L. Ed. 893].) Furthermore, the Missouri court in its opinion made no mention of either *Newport Co.* v. *Tax Com.,* 219 Wis. 293 [261 N. W. 884, 100 A. L. R. 1204], *certiorari* denied 297 U. S. 720 [56 Sup. Ct. 598, 80 L. Ed. 1004], or *Domenech* v. *United Porto Rican Sugar Co.,* 63 Fed. (2d) 552, *certiorari* denied 289 U. S. 739 [53 Sup. Ct. 656, 77 L. Ed. 1486], each of which considered at great length the question of source of income in its relation to taxable situs for intangibles. Both these cases decided the exact issue involved in the Missouri decision squarely *contra* to the latter and applied without exception the rule of *mobilia* in such circumstances. As the result of these pertinent observations, the limitations of the holding in *Union Electric Company of Missouri* v. *Coale, supra,* in so far as they reflect on the present case, must be recognized.

Respondent urges that the long line of federal cases (*First Nat. Bank* v. *Maine, supra, Beidler* v. *South Carolina, supra, Baldwin* v. *Missouri, supra, Farmers Loan & Trust Co.* v. *Minn., supra, Safe Deposit & Trust Co.* v. *Virginia, supra,* and *Blodgett* v. *Silberman, supra*), as well as the California case of *Estate of McCreery, supra,* cited by appellant as supporting his contention that the situs of the stock owned by the respondent was in California and that the source of the dividends was also in California, has no application to the instant case because those cases involve inheritance and property taxes. But it appears to us that if there is any reason for the rule of *mobilia sequuntur personam* in connection with property or inheritance taxation, there is every bit as much reason for that rule in income taxation. The practical difficulties inherent in the application of any other principle in determining the source of income have undeniably constituted an important factor in the adoption and survival of this well-established common-law tenet (*Rhode Island Hospital Trust Co.* v. *Doughton, supra*). Respondent cites as authority for his statement that this rule has not been applied by the courts to income taxation, the case of *Lawrence* v. *State Tax Com.,* 286 U. S. 276 [52 Sup. Ct. 556, 76 L. Ed. 1102], in which the court held that Mississippi had constitutional jurisdiction to tax a resident on compensation for personal services

performed in another state. However, the income in question was not derived from the ownership of intangibles, but from the performance of personal services. The references made by the court to intangibles were made in support of the right of Mississippi to tax under the facts of the case and were not made to indicate that the income in question was from intangibles. No corporation intervened between the performance of the services and the right of Lawrence to the income. He acquired the right to the income immediately on completion of the service. The intangible, if any, was merely a note for his compensation and was not the source of his income, but instead was mere evidence of it.

The doctrine of *mobilia sequuntur personam* has been repeatedly and consistently maintained in determining the taxable situs of intangible property, and as recently as the 1938–1939 term the Supreme Court of the United States again recognized it in *Curry* v. *McCanless,* 307 U. S. 357 [59 Sup. Ct. 900, 906, 83 L. Ed. 1339, 123 A. L. R. 162], wherein the majority opinion stated:

"In cases where the owner of intangibles confines his activity to the place of his domicil it has been found convenient to substitute a rule for a reason, (citations omitted) by saying that his intangibles are taxed at their situs and not elsewhere, or, perhaps less artificially, by invoking the maxim *mobilia sequuntur personam,* (citations omitted) which means only that it is the identity or association of intangibles with the person of their owner at his domicil which gives jurisdiction to tax. But when the taxpayer extends his activities with respect to his intangibles, so as to avail himself of the protection and benefit of the laws of another state, in such a way as to bring his person or property within the reach of the tax gatherer there, the reason for a single place of taxation no longer obtains. . . . "

The discussion regarding the source of the dividend income is equally applicable to the source of profit from the sale of the stock. As the rule of *mobilia* gives this stock a situs in California, all income from it was from sources in California. Its sale to a Philippine customer through a Philippine broker does not mean that the profit from its sale was income from Philippine sources. Respondent made a profit from the sale of property located in California, so the profit is derived from sources in California, and the mere

fact that the certificates, the evidences of title, were in the Philippines does not alter this conclusion (*First Nat. Bank* v. *Maine, supra, Beidler* v. *South Carolina, supra; Baldwin* v. *Missouri, supra,* and *Farmers Loan & Trust Co.* v. *Minn., supra*).

At this point it should be noted that the general principle in relation to situs for the purposes of taxation of intangible personal property embodied in the maxim *mobilia sequuntur personam* has a well-established exception to the effect that there may be a business situs of intangibles distinct from the domicile of the creditor. But respondent has not divided his activities so as to bring himself within this exception. He did not set his property aside in a Philippine trust or engage in business in the Philippines. In consequence, nothing appears here to indicate that the *mobilia* rule is not applicable to this case.

By virtue of express statutory provision the Philippines do not apply the maxim of *mobilia sequuntur personam* so as to avoid their taxation of nonresidents on dividends received by them from Philippine corporations or on the income from sales of property having a situs in other jurisdictions. That the Philippines may impose such a tax does not mean that under our theories and our act such income is derived from the Philippines. Rather it simply indicates that the Philippines have adopted a theory and philosophy of taxation different from that adopted by California, which has uniformly applied the well-recognized principle of *mobilia sequuntur personam* in determining the situs of intangibles for purposes of taxation.

In accord with the foregoing analysis it is our conclusion that respondent is not entitled to a credit for taxes paid to the Philippines upon the dividend income and the gain from the sale of these stocks.

The judgment is reversed with direction to the trial court to enter judgment for the appellant in accordance with the views herein expressed.

Edmonds, J., Shenk, J., Carter, J., Spence, J., *pro tem.*, and Gibson, C. J., concurred.

Traynor, J., took no part in the consideration or decision of this case.

A petition for a rehearing was denied March 20, 1941. Traynor, J., took no part in the consideration or decision of this matter.