[No. D036034. Fourth Dist., Div. One. Mar. 23, 2001.]

GENE VALENTINO et al., Plaintiffs and Appellants, v.
FRANCHISE TAX BOARD, Defendant and Respondent.

**COUNSEL**

Cruse & Hough and Kyle A. Cruse for Plaintiffs and Appellants.

Bill Lockyer, Attorney General, Gregory S. Price and Leslie Branman Smith, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

**WORK, Acting P. J.**—The sole issue presented by this appeal is whether California source income of an S corporation, passed through to a nonresident, is subject to California tax. Gene and Maureen Valentino (the Valentinos) appeal a judgment in favor of the State of California Franchise Tax Board (the Board) entered after the trial court denied the Valentinos' motion for summary judgment on their complaint for refund of taxes and, on stipulated facts, found in favor of the Board. The Valentinos contend that the income the Board seeks to tax was derived from the ownership of stock, and under Revenue and Taxation Code[1] section 17952, the income must be classified as an "intangible" which is taxed by the state of residence of the shareholder (Florida), rather than the state in which the corporation conducts business (California). The Board contends the Legislature intended to tax subchapter S corporations and their shareholders in the same manner as partnerships are taxed and thus it properly demanded payment of taxes from the Valentinos on income derived from their ownership of Cellular 2000 Telephone Company, Inc. (Cellular 2000) stock. As we shall explain, we conclude California source income of an S corporation, passed through to a nonresident shareholder, is subject to California tax. Accordingly, we affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

The Valentinos are married and reside in Pensacola, Florida. They at all relevant times owned stock in Cellular 2000, a Delaware corporation qualified to do business in California. Cellular 2000 did business in California and was taxed as an S corporation for federal and California tax purposes. It filed a form 100S, California S corporation Franchise or Income Tax Return for income years ending December 31, 1993, December 31, 1994, and December 31, 1995. The income earned by it was derived from California sources for the income years relevant to this matter. Cellular 2000 paid the California franchise tax of 2.5 percent on its net income derived from sources within the state for income year ending December 31, 1993. It further paid a California franchise tax of 1.5 percent on its net income derived from sources within the state for income years ending December 31, 1994, and December 31, 1995. (§ 23802, subd. (b)(1).)

The Valentinos filed form 540NR, California Nonresident or Part-Year Resident Income Tax Return, for taxable years 1993 and 1994 with the Board. They filed form 540NR for taxable year 1995, but did not report California income or identify any California tax liability. Later, they filed

---

[1] All statutory references are to the Revenue and Taxation Code, unless otherwise specified.

amended returns with the Board to eliminate all income from Cellular 2000 and to request a refund of all tax paid for taxable years 1993 and 1994. The Board issued the refunds as requested and started an audit to determine if the refunds for taxable years 1993 and 1994 were proper. Upon completion of the audit, the Board issued notices of proposed assessment for taxable years 1993 and 1994, as well as for taxable year 1995. The Valentinos protested the proposed assessments, which were later affirmed by the Board. Notices of action affirming the assessments were issued on March 30, 1998. They paid the tax and interest amounts for tax years 1993, 1994 and 1995 as referenced in the notices of action on May 27. Later, they were billed and they paid additional interest due for the three tax years in the amount of $708.78. The total amounts of payments they made to the Board were $7,247.47 for 1993; $16,207.93 for 1994; $25,236.75 for 1995; and the additional payment for all three years of $708.78.

On June 7, 1999, the Valentinos filed a claim for refund with the Board. Because it failed to mail notice of action on the claim for refund within six months after the claims were filed, the Valentinos considered them disallowed and proceeded to file this action for refund of taxes on December 8, 1999. The Board then refunded again the money to the Valentinos, while also sending a notice denying the refund to them. The Board later demanded the Valentinos return the money, claiming the refund was erroneous and that it intended to deny their claim for refund. The Valentinos complied.

On May 19, 2000, the Valentinos' motion for summary judgment was denied and the telephonic ruling of the court was affirmed. A week later, a trial on stipulated facts was held and the court took the matter under submission. On June 14, the court entered judgment in favor of the Board, reasoning:

"[The Valentinos] cite to Revenue and Taxation Code section 17952 and *Christman v. FTB*, 64 Cal.App.3d 751 [134 Cal.Rptr. 725] (1976), and in *Appeal of Ronnie C. and Patricia S. Childs*, August 1, 1980, for the proposition that California follows the doctrine of *mobilia sequuntur personam* (movables follow the law of the person) as to intangible property such as stocks. Plaintiffs therefore argue that nonresidents of the State are not required to pay a tax on income derived from stock of a foreign S corporation doing business in California unless the intangible property itself, i.e., the stock, acquires a business situs in California.

"S corporations, however, are treated more like partnerships (pass through taxation) by California law than like ordinary corporations. In addition, Plaintiffs' cited sources precede the passage of law recognizing S corporations in California. Indeed, when the Legislature enacted Revenue and

Taxation Code section 18535, it allowed nonresident shareholders deriving income from an S corporation doing business in California to file a composite nonresident return to report their pro rata share of income from California sources. The Legislature also enacted section 23801(b), requiring nonresident shareholders of S corporations that do business in California to file a consent to be subject to the jurisdiction of the State of California to enable the State to tax the nonresident shareholders' pro rata share of 'income attributable to California sources.' Therefore, it appears that with regard to S corporations, the Legislature intended to look directly at the source of the income (not the situs of the stock) to determine whether the [non]residents shareholders' pro rata share of the income is taxable by California.

"The Court notes that Revenue and Taxation Code section 23801 conforms to Internal Revenue Code section 1366(b), which also states that the character of the shareholders' pro rata share of S corporation income is determined as if the income were realized directly from the source from which realized by the corporation. Any other interpretation renders the phrase 'realized directly from the source from which realized by the corporation' meaningless. Therefore, California law provides that the source of the income, not just the income itself, derived by the shareholders from S corporations is passed through to the shareholders themselves. The source of the income is not the stock. It is the location of the income producing activity creating the income. The *mobilia* doctrine has nothing to do with the new S corporation regulations. Lastly, this ruling is entirely consistent with the tax treatment afforded subchapter S corporations by other states, which have adopted Internal Revenue Code section 1366(b), to nonresident shareholders of S corporations doing business in those states." The Valentinos timely appealed.

### HISTORICAL OVERVIEW—TREATMENT OF S CORPORATIONS UNDER FEDERAL AND CALIFORNIA TAX LAW

Under federal income tax law, there are two distinct types of corporations, C and S corporations so named because of their governing subchapters under chapter 1, subtitle A of the Internal Revenue Code. The former constitutes a separate entity which pays corporate income taxes based upon its net income. (§ 23151, subd. (a).) The latter, however, generally does not pay taxes as an entity. (26 C.F.R. § 1.1363-1 (1993).) "Rather, the S corporation files only an informational return reporting for the taxable year its gross income (or loss) and deductions, its shareholders, and the shareholders' pro rata shares of each item. (26 U.S.C. § 6037(a).) The items are then 'passed through' on a pro rata basis to the shareholders, who report them on their personal income tax returns. [Citations.] 'The S corporation is, in effect, a

Code-created hybrid combining traits of both corporations and partnerships.' [Citation.]" (*Heller v. Franchise Tax Bd.* (1994) 21 Cal.App.4th 1730, 1733 [27 Cal.Rptr.2d 88], quoting *Beard v. U.S.* (11th Cir. 1993) 992 F.2d 1516, 1518.)

California did not distinguish between C corporations and S corporations for state tax purposes before 1987, instead treating all corporations as C corporations. (2 Plant & Eager, Cal. Tax Analysis (CCH 1995) § 45.121 [2], p. IV-1715.) However, commencing that year, California changed its tax law so that "Subchapter S of Chapter 1 of Subtitle A of the Internal Revenue Code, relating to the tax treatment of 'S corporations' and their shareholders, shall apply, except as otherwise provided." (§ 23800, subd. (a); see 2 California Taxes (Cont.Ed.Bar 2d ed. 1996) § 4.101, p. 226.) One notable difference between federal and California law regarding the treatment of S corporations is that under the former, with certain exceptions not relevant here, S corporations do not pay federal income tax (26 U.S.C. § 1363(a); 26 C.F.R. § 1.1363-1 (1993)), while under California law a state tax is imposed upon the net income of the reporting S corporation (§ 23802, subds. (a), (b)(1)). (*Heller v. Franchise Tax Bd., supra,* 21 Cal.App.4th at p. 1734.) From the perspective of the shareholder, C corporations are taxed upon their income as separate entities, and their distributions of earnings and profits to their shareholders are generally taxable to the shareholders as dividends. In contrast, S corporation shareholders are taxed on their pro rata share of the corporation's income, regardless of whether it makes any distributions. (*Ibid.*)

At the same time California adopted federal S corporation rules, it enacted statutes governing the assessment and collection of tax from nonresident shareholders. Section 23801, subdivision (b)(1) requires every nonresident shareholder of an electing S corporation to consent to the jurisdiction of California to tax his or her share of S corporation income from California sources. (See 2 California Taxes, *supra,* § 4.106, p. 230.) Former section 23801, subdivision (b)(2) required an S corporation to pay estimated tax on California source income of its nonresident shareholders. To simplify the filing of nonresident income tax returns, section 18535 permitted nonresident shareholders of an S corporation doing business in California or deriving income from California sources to file a single composite nonresident return reporting their share of S corporation income derived from California sources.[2]

---

[2]To avoid double taxation when a California resident shareholder pays tax to another state where the S corporation derives income, sections 18001 and 18006 were amended to provide

## CALIFORNIA SOURCE INCOME OF AN S CORPORATION, PASSED THROUGH TO A NONRESIDENT, IS SUBJECT TO CALIFORNIA TAX[3]

■ California imposes a tax on the entire taxable income of every nonresident to the extent it is derived from sources in this state. (§ 17041, subd. (b).) As summarized above, California has essentially adopted federal tax law regarding the treatment of subchapter S corporations. (§ 23800, subd. (a).) Thus, following federal tax law, the character of a shareholder's pro rata share of S corporation income is determined as if the income were realized directly from the source from which realized by the corporation. (26 U.S.C. § 1366(b).)[4] This principle is known as the "conduit rule" and was intended by Congress to be the same as the partnership rule. (Sen.Rep. No. 97-640, 2d Sess. (1982), reprinted in 1982-2 C.B. 718, 725; Eustice & Kuntz, Federal Income Taxation of S corporations (3d ed. 1993) ¶ 7.07 [5], p. 7-97; Rev. Rul. 87-121, 1987-2 C.B. 217; Christian & Grant, Subchapter S Taxation (4th ed. 2000) ¶ 16.10, p. 16-27.) "As in the case of nonresident partners, nonresident S corporation shareholders may be taxed by a state only to the extent the income claimed to be subject to tax is fairly attributable to activities of the S corporation in the taxing state." (Willson & Windfeld, Tax Management Multistate Tax Portfolios—State Taxation of Pass-Through Entities: General Principles, No. 1500 (BNA 1998) p. 43.)

Under section 17951,[5] the gross income of nonresident taxpayers thus includes only the gross income from sources within this state. Where a nonresident's business, trade or profession is conducted wholly within California, the entire gross income must be reported. (Cal. Code Regs., tit. 18,

---

relief in the form of a credit for taxes imposed by the other state against California taxes paid by the shareholder.

[3]The parties agree the interpretation and application of the statutory scheme in controversy to an undisputed set of facts constitutes a question of law subject to de novo review on appeal. (*Rudd v. California Casually Gen. Ins. Co.* (1990) 219 Cal.App.3d 948, 951 [268 Cal.Rptr. 624].) In interpreting the statutory scheme, our primary function is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. To do so, we look first to the words of the statute itself, endeavoring to accord them their usual and ordinary meaning. We construe the language in the context of the statutory framework as a whole, always mindful of the policies and purposes underlying the enactment and endeavoring to read the language so as to conform to its spirit. (*Id.* at p. 952.)

[4]Internal Revenue Code section 1366(b) provides: "The character of any item included in a shareholder's pro rata share under paragraph (1) of subsection (a) shall be determined as if such item were realized directly from the source from which realized by the corporation, or incurred in the same manner as incurred by the corporation."

[5]Section 17951 provides: "In the case of nonresident taxpayers the gross income includes only the gross income from sources within this State."

§ 17951-4.)[6] It is undisputed that Cellular 2000 income was derived from business conducted within California. Because the conduit principle cited above characterizes the Valentinos' pro rata share of Cellular 2000 income as if the income were realized directly from the source from which realized by the corporation, the Valentinos are treated as though they conducted business wholly within California in their individual capacities. (Christian & Grant, Subchapter S Taxation, *supra*, ¶ 1.17, pp. 1-24, 1-25; see 1 Cal. Tax Rptr. (CCH) ¶ 12-051, p. 1181; 2001 Guidebook to California Taxes (CCH 2000) ¶ 232, p. 240.) This attribution of business activity parallels the treatment of nonresident aliens as being engaged in a trade or business within the United States where the partnership of which such individual is a member is so engaged. (26 U.S.C. § 875(1); see also Rev. Rul. 87-121, 1987-2 C.B. 217.) Thus, an S corporation shareholder's income is characterized by reference to the corporate-income-producing activity and, once characterized, the items are then sourced according to the particular sourcing rule applicable to each type of income. Consequently, the Valentinos were required to report their share of Cellular 2000 income as gross income from sources within California.

Relying on section 17952[7] and the doctrine of *mobilia sequuntur personam* (movables follow the law of the person), the Valentinos assert that because their income is from Cellular 2000 stock the source of the income is determined by looking to their residence. They note there is no authority for limiting the scope of section 17952 to essentially C corporation stock. Granted, section 17952 and the *mobilia* doctrine provide that income of nonresidents from intangibles, such as stock, does not generally have a source in California. However, Internal Revenue Code section 1366(b) characterizes S corporation income as to the shareholder by reference to its character as to the corporation, not as income from stock. In other words, a shareholder of a C corporation is taxed on income received from the corporation, while a shareholder of an S corporation is taxed on income received by the corporation as if he or she received it. As such, a shareholder's pro rata share of corporate income is not income from stock in the same sense as dividends and gain from the sale of stock. Indeed, it cannot be characterized as income from stock unless the corporate income itself is derived from stock. Rather, such income is corporate income derived directly from corporate activities and passed through and taxed at the shareholder level as if the shareholder earned the income in his or her individual

---

[6]California Code of Regulations, title 18, section 17951-4, subdivision (a) provides: "If a nonresident's business, trade or profession is carried on entirely without the state, no portion of the gross income therefrom should be reported. If, on the other hand, the nonresident's business, trade or profession is conducted wholly within the state the entire gross income therefrom must be reported."

[7]Section 17952 pertinently provides: "Income of nonresidents from stocks, bonds, notes, or other intangible personal property is not income from sources within this State unless the property has acquired a business situs in this State. . . ."

capacity. (Christian & Grant, Subchapter S Taxation, *supra*, ¶ 1.17, p. 1-25; see 1 Cal. Tax Rptr. (CCH) ¶ 12-051, p. 1181.) Here, the attribution of Cellular 2000 income to the Valentinos was determined by their percentage of ownership of the outstanding shares, income that was derived from the tangible sources from which the corporation received it and not from the intangible shares themselves. Consequently, section 17952 never applies to a shareholder's share of S corporation income unless the corporate income itself is derived from intangibles. (See § 17952; Cal. Code Regs., tit. 18, § 17952, subd. (c).)[8]

The Valentinos' reliance on *Miller v. McColgan* (1941) 17 Cal.2d 432, 437 [110 P.2d 419, 134 A.L.R. 1424], and *Christman v. Franchise Tax Bd.* (1976) 64 Cal.App.3d 751, 758-759 [134 Cal.Rptr. 725], for the propositions that the source of the income to the shareholder is the corporate stock and that the source of the income from the stock is the state where the owner resides under the *mobilia* doctrine unless it acquires a business situs elsewhere, is misplaced. These cases are distinguishable in that both involved the source of dividends received, not a pro rata share of S corporation income, and taxable years *before* California adopted S corporation rules. Granted, the *Christman* corporation was an S corporation for Georgia income tax purposes; however, it was a C corporation for California purposes. Within this earlier context, the *Miller* court aptly pointed out: "[I]t appears that there is in the beginning an income to the corporation, and that part of such income in turn is passed on to the shareholder in the form of dividends. *As such it represents in law an income to the shareholder quite distinct from the income to the corporation.* Therefore, in the absence of an express statutory mandate to the contrary, it logically follows that the source of the income to the shareholder . . . is the corporate stock." (*Miller v. McColgan, supra*, 17 Cal.2d at p. 437, italics added.)[9]

The Valentinos assert the Board's interpretation of Internal Revenue Code section 1366(b) is erroneous, as the provision only deals with the "character"

[8]For example, assume hypothetically that an S corporation obtains income from the sale of real estate in California. Under Internal Revenue Code section 1366(b), that income as to the shareholder is characterized as if it were realized directly from the source from which it was realized by the corporation, that is from the sale of real estate. The source of the income is California because the real estate is located here. Section 17952 thus does not apply, because the corporate income is not income from intangibles.

[9]To place this matter in full context, Cellular 2000 could have elected to be taxed as a C corporation in California and any dividends paid to the Valentinos would not have been subject to California income tax. However, the corporation chose to avoid the 9.3 percent franchise tax imposed on C corporations doing business in California, opting for the reduced rate of 1.5 percent applied to S corporations. As a consequence, the Valentinos are liable for tax on their share of Cellular 2000 income derived from California sources, but not on any dividends received.

of an item of income and does not address the source or location of the income passing through to the shareholder. They assert this makes perfect sense in the context of the federal taxation scheme, because the source or location of income is not an issue when considering federal taxes. That is, the source of income for a United States resident shareholder of a United States recognized S corporation will always be the United States. However, the Board counters, asserting that sourcing shareholder income by reference to corporate-income-producing activity constitutes the logical result of applying the cited characterization rule and California Code of Regulations, title 18, section 17951-4. The Board contends it would be absurd to characterize the income by reference to the underlying corporate activities and then source it by reference to another characterization (i.e., income from intangibles [stock]).

That the Legislature intended the income be sourced to locations where the corporation conducted business is evident by its enacting sections 18535 and 23801, subdivision (b)(1). Section 18535 allows nonresident shareholders of an S corporation doing business or deriving income from California to file a single composite nonresident return reporting their shares of S corporation income from California sources. This enactment demonstrates the Legislature considered that nonresident S corporation shareholders were subject to taxation on corporate income generated in California by providing them a mechanism to simplify the reporting of such income. If the income had a source in the shareholder's state of residence and not where the corporate-income-producing activities occurred, then a nonresident shareholder of an S corporation would never be taxed on his or her share of S corporation California income, rendering the provision a nullity. Similarly, section 23801, subdivision (b)(1) requires each nonresident shareholder of an electing S corporation to file a consent with the Board to be subject to the jurisdiction of California to tax his or her "pro rata share of the income attributable to California sources."[10] Again, if the source of such income were the shareholder's state of residence, the filing of this consent would be meaningless. It facilitates California taxation of income attributable to California sources.[11] To limit the application of Internal Revenue Code section 1366(b) and to apply section 17952 as suggested by the Valentinos would

---

[10]Section 23801, subdivision (b)(2) requires an S corporation to include in its return for each taxable year a list of shareholders as prescribed by the Board.

[11]It has been suggested this consent requirement of section 23801, subdivision (b)(1) was adopted due to a concern the state lacked the constitutional jurisdiction to tax nonresident S corporation shareholders on income from business activities sourced within the state. However, the law is settled that there is no constitutional bar to imposing the tax. (*Meyer v. Charnes* (Colo.Ct.App. 1985) 705 P.2d 979, 983; *Kulick v. Department of Revenue* (1981) 290 Or. 507 [624 P.2d 93, 98-99] [concluding that Oregon had the power to tax S corporation distributions to nonresident shareholders]; see *Wisconsin v. J. C. Penney Co.* (1940) 311 U.S.

result in the income being sourced outside the state.[12] (See also *Isaacson v. Iowa State Tax Commission* (Iowa 1971) 183 N.W.2d 693, 695 [under similar circumstances, the Iowa Legislature intended to subject nonresident shareholders of S corporations doing business in Iowa to Iowa tax on the shareholder's distributive share of Iowa source income].)[13]

The Board admits that, within the context of Internal Revenue Code section 1366(b), the Valentinos' assertion that sourcing is not an issue for federal tax purposes is partly correct. Although sourcing income is necessary under federal law to determine a nonresident alien's tax liability as a general matter (26 U.S.C. § 861 et seq.), an S corporation cannot by definition have a nonresident alien shareholder (26 U.S.C. § 1361(b)(1)(C)). However, this does not mean that for federal purposes the source of S corporation pass through income is not determined by reference to corporate activities. Indeed, for purposes of determining income from sources outside the United States, the source of such income is determined by reference to where the corporation conducted business. (26 U.S.C. §§ 1373, 875, 871.) Rather, its exclusion from Internal Revenue Code section 1366(b) is simply because as to nonresident aliens the sourcing rule is irrelevant given an S corporation cannot have them as shareholders.

Mindful of the substantial similarity between the federal partnership and S corporation provisions (compare Int.Rev. Code, subtit. A, ch. 1, subch. C with Int.Rev. Code, subtit. A, ch. 1, subch. S.) and that California conforms to these provisions in all material respects (§§ 17951, 23800), our interpretation is fully consistent with the long-standing treatment of partnerships by the federal government and this state for tax purposes. As previously noted,

435 [61 S.Ct. 246, 85 L.Ed. 267, 130 A.L.R. 1229] [concluding that states may require corporations to withhold state tax on dividends paid to nonresident shareholders]; Willson & Windfeld, Tax Management Multistate Tax Portfolios—State Taxation of Pass-Through Entities: General Principles, No. 1500, *supra*, pp. 41-42; *Appeal of Manter* (1999) 99 SBE 008 [Cal. Tax Rptr. (CCH) ¶ 403-067], fn. 3; see also *Wisne v. Department of Treasury* (2001) 244 Mich.App. 342 [625 N.W.2d 401] [Mich. Tax Rptr. (CCH) ¶ 400-863].)

[12]We note that former section 23801, subdivision (b)(2) required an S corporation to pay estimated tax on California source income of its nonresident shareholders. If the source of that income were determined by reference to the shareholder's residence rather than by the location of the corporate activities, such payments would not have been required.

[13]Further, sections 18001 and 18006 allow a California resident shareholder of an S corporation a credit against California tax for taxes paid to another state on S corporation income taxed by that state. This scenario arises when an S corporation conducts business in another state and the California shareholder incurs tax liability in that state. Sections 18001 and 18006 allow the credit, however, only if the income has a source in the other state according to California's sourcing rules. (*Christman v. Franchise Tax Board, supra*, 64 Cal.App.3d at p. 759.) If the source of S corporation income were determined by reference to the shareholder's residence, California would never allow the credit because the source of the income would be California and not the other state.

the rules set forth in the Subchapter S Revision Act of 1982 for taxing S corporations were by design to follow generally the rules governing the taxation of partners with regard to items of partnership income and loss. Consequently, the conduit rule of Internal Revenue Code section 1366(b) was intended by Congress to be the same as the partnership rule, Internal Revenue Code section 702(b). (Sen.Rep. No. 97-640, 2d Sess. (1982), reprinted in 1982-2 C.B. 718, 725; Eustice & Kuntz, Federal Income Taxation of S corporations, *supra,* ¶ 7.07 [5], p. 7-97; Christian & Grant, Subchapter S Taxation, *supra,* ¶ 16.10, p. 16-27; Rev. Rul. 87-121, 1987-2 C.B. 217.) The similarity in treatment between partners and S corporation shareholders extends to sourcing matters as well. (See Willson & Windfeld, Tax Management Multistate Tax Portfolios—State Taxation of Pass-Through Entities: General Principles, No. 1500, *supra,* p. 43.) Internal Revenue Code section 1373(a) provides that for purposes relating to income from sources outside the United States, an S corporation shall be treated as a partnership and its shareholders shall be treated as partners of such partnership. The source of a partner's distributive share of partnership income is determined at the partnership level. Consequently, if the partnership is conducting business entirely within a single state, the partner's distributive share is sourced where the partnership property is located and where the partnership business activity is carried on. (*Appeal of Ahmanson* (1965) 65 SBE 013, [Cal. Tax Rptr. (CCH) ¶ 202-855].) California Code of Regulations, title 18, section 17951-1, subdivision (b) provides that the gross income of a nonresident who is a member of a partnership includes his or her distributive share of the taxable income of the partnership to the extent it is derived from sources within California. "Partnerships, like S corporations, are 'pass-through' entities. Partnership interests are intangible property, just as are shares of an S corporation. Taxation of partners is imposed in California by reference to the corresponding provisions of the Internal Revenue Code. Nonetheless, and despite there being no explicit exemption for partnership intangible interests in section 17952, [the State Board of Equalization], by long-standing Regulation has held that pass-through partnership income received by a non-resident is subject to California tax where the source of the partnership's income is in this state. (See 18 California Code of Regulations, § 17951-1.)" (*Appeal of Manter, supra,* 99 SBE 008 [Cal. Tax Rptr. (CCH) ¶ 403-067].)

The Valentinos challenge the notion the Legislature and regulatory agencies intended to treat S corporation shareholders in the same manner as partners in a partnership as to sourcing. Relying on California Code of Regulations, title 18, section 17951-1, subdivision (b) cited above providing that the source of partnership income passes through to the individual partners, they suggest the regulation makes clear that the Legislature and

administrative agencies know how to expressly make the source of income of a business entity pass-through as the source of income to nonresidents when they so intend. Thus, the Valentinos reason that the fact they have not done so regarding an S corporation leads to the inevitable conclusion they did not intend to pass the source through from the corporation to the shareholders. Given the universal recognition of the similarity in treatment between the taxation of partnerships and S corporations, we are unpersuaded. The fact that the *Board* has not amended its regulations so as to specifically address sourcing as to an S corporation shareholder should not be interpreted as evidence the *Legislature* did not intend to assign a source to pass through income by reference to corporate activities. Casting aside the fact it is not the Legislature's function to amend a regulation, to do so is unnecessary in light of the foregoing analysis and interpretation of statutory provisions addressing the taxation of nonresident shareholders.

In summary, guided by the cardinal rules governing statutory interpretation, we conclude the Legislature intended the source of S corporation pass through income be determined by reference to corporate-income-producing activities. That is, the source of a shareholder's pro rata share of S corporation income is first characterized by reference to corporate-income-producing activities under Internal Revenue Code section 1366(b), and then as characterized is sourced to locations according to the rule that applies to that type of income. Our interpretation is predicated upon the Legislature's actions to require nonresident shareholders' consent to the taxing jurisdiction of California as a condition to allowing a corporation to elect S corporation status, to formerly require S corporations to pay estimated tax on the California source income of nonresident shareholders, to allow nonresident partners of an S corporation to file a single composite return to report their share of S corporation income from California sources, and to allow shareholders to claim a credit against California tax for taxes paid to another state on income having a source in the latter state. Moreover, our interpretation harmonizes Internal Revenue Code section 1366(b) with section 17952, by applying the latter to income characterized at the corporate level as income from intangibles. In other words, section 17952 is not displaced by Internal Revenue Code section 1366(b), because it continues to apply in those situations it did before the enactment of the S corporation provisions—that is, to determine the source of stock dividends and income from the sale of stock.[14]

---

[14]We note that jurisdictions that have addressed this issue have likewise concluded the source of a nonresident shareholder's pro rata share of S corporation income is determined by reference to the location of corporate activity. (See generally Ala. Reg. 810-3-162-.01; Del. Technical Information Mem. 93-3, Apr. 30, 1993, Del. Tax Rptr. (CCH) ¶ 200-501; Hawaii Reg., § 18-235-122; Ind. Reg., Ind. Admin. Code tit. 45, T.3.1-1-67; Ky. Admin. Releases, Rev. Circular 40C010, Ky. Tax Rptr. (CCH) ¶ 18-215; Ky. Rev. Stat. Ann. § 141.206; Mass.

DISPOSITION

The judgment is affirmed.

Huffman, J., and Haller, J., concurred.

Gen. Laws ch. 62, § 17A(b); Me. Reg., Code Me. R. § 806, Nonresident Individual Income Tax, Me. Tax Rptr. (CCH) ¶ 18-015; Miss. Reg. 803, Election of Certain Small Business Corporations (S corporations), Miss. Tax Rptr. (CCH) ¶ 18-450; Mo. Reg., 12 C.S.R. 10-2.190, Mo. Tax Rptr. (CCH) ¶ 19-136; Neb. Reg. 22.003.01E(1), Neb. Tax Rptr. (CCH) ¶ 18-037; N.Y. Tax Law §§ 601(e), 631(a), 632(a)(2); N.Y.S. Dept. of Tax & Fin., Pub. 35, New York Tax Treatment of S corporations and Their Shareholders (Feb. 1996); N.D., N.D. Cent. Code § 57-38-01.4; S.C. Rev. Proc. #92-5, June 1, 1992, S.C. Tax Rptr. (CCH) ¶ 310-003; Va. Code § 58.1-325B; Va. Rul. of Commissioner, P.D. 93-57, Mar. 5, 1993, Va. Tax Rptr. (CCH) ¶ 202-270; W. Va. Code, §§ 11-21-71a(b)(1), 11-21-32, 11-21-71a(e); All States Tax Guide (RIA) ¶ 222-C. Income Tax Treatment of S corporations; 1 Multistate Corporate Income Tax Guide (CCH) ¶ 63, S corporations.)