[No. B168916. Second Dist., Div. Five. Aug. 9, 2004.]

CITY OF LOS ANGELES, Plaintiff and Appellant, v.
FURMAN SELZ CAPITAL MANAGEMENT, L.L.C., Defendant and
Respondent.

506

**COUNSEL**

Rockard J. Delgadillo, City Attorney, Claudia McGee Henry and Noreen Vincent, Assistant City Attorneys, Kim Rodgers Westhoff and Miguel A. Dager, Deputy City Attorneys, for Plaintiff and Appellant.

Sheppard, Mullin, Richter & Hampton and James F. McShane for Defendant and Respondent.

**OPINION**

**GRIGNON, J.—** ■ In this case, we are concerned with the interplay between two unrelated provisions of the Revenue and Taxation Code. The first provision imposes a higher net income tax rate on financial corporations in lieu of other taxes, including municipal taxes. (Rev. & Tax. Code, § 23182.) ■ The second provision permits a wholly-owned limited liability company to be disregarded as a separate entity for tax purposes and to be taxed as a division of its parent corporation. (Rev. & Tax. Code, § 23038.) In this case, a municipality imposes a gross receipts tax on limited liability companies doing business within the municipality and is seeking to impose its gross receipts tax on a limited liability company, wholly owned by a financial corporation, whose separate existence has been disregarded for tax purposes. The municipality acknowledges that it could not impose the gross receipts tax on the parent financial corporation, but contends the in lieu tax provisions are not applicable to the limited liability company. ■ We conclude the municipality may not levy taxes on a limited liability company wholly owned by a financial corporation, where the income of the limited liability company has been included in the income of the parent financial corporation and subjected to the higher income tax rate imposed on financial corporations in lieu of other taxes.

## PROCEDURAL BACKGROUND

Plaintiff and appellant City of Los Angeles (the City) imposes a business tax measured by gross receipts on limited liability companies doing business within the City. The City levied the tax on defendant and respondent Furman Selz Capital Management, L.L.C. (Furman) for the tax years 1999–2001. Furman disputed the tax. On October 15, 2002, the City filed a complaint against Furman for money due on an unpaid tax assessment. The City sought a total of $279,410.96 in taxes, interest, and penalties. Furman filed an answer that alleged as a defense that it is a limited liability company wholly owned by a financial corporation, whose separate existence has been disregarded for tax purposes and whose net income has been subjected to the higher net income tax rate imposed on financial corporations. A one-day court trial was held on May 19, 2003. The trial court entered judgment in favor of Furman. The City filed a timely notice of appeal.

## FACTS

Furman provides money management, investment advice, and other financial services to institutional clients. Furman is a limited liability company formed in 1995 under the Delaware Limited Liability Company Act (Del. Code Ann. tit. 6, § 18-101 et seq.) and authorized to do business in California since 1996. Furman is owned by a single member, ING Furman Selz Asset Management L.L.C. In turn, Asset Management is owned by a single member, ING Financial Holdings Corporation (ING).

ING is a financial corporation under California law. As a financial corporation, ING pays a higher net income tax rate than the standard corporate tax rate and is exempt from most other state, county, and municipal taxes. Furman has elected for tax purposes to have its separate entity disregarded and to be treated as a division of ING. ING's consolidated state income tax return includes Furman's revenues, expenses, and other financial information.

In February 2002, the City assessed a business tax against Furman based on Furman's gross receipts for the period 1999–2001. In April 2002, the City threatened to suspend or revoke Furman's certificate to do business. Furman sent a letter to the City asserting that it was a division of ING for tax purposes and entitled to immunity from the City's tax.

## DISCUSSION

*Standard of Review*

The material facts are undisputed. Where the facts are undisputed, only questions of law confront us and the trial court's findings do not bind us.

(*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799 [35 Cal.Rptr.2d 418, 883 P.2d 960]; *Mole-Richardson Co. v. Franchise Tax Bd.* (1990) 220 Cal.App.3d 889, 894 [269 Cal.Rptr. 662].) We may examine the facts and make our own conclusions and findings. (*Gates Rubber Co. v. Ulman* (1989) 214 Cal.App.3d 356, 363 [262 Cal.Rptr. 630]; *Newman v. Franchise Tax Bd.* (1989) 208 Cal.App.3d 972, 977 [256 Cal.Rptr. 503].)

*Historical Background*

Historically, federal statutes severely restricted state taxation of national banks. (*Western States Bankcard Assn. v. City and County of San Francisco* (1977) 19 Cal.3d 208, 215–216 [137 Cal.Rptr. 183, 561 P.2d 273].) The federal statutory scheme required tax-rate parity between national and state banking institutions. (*Ibid.*) The federal statutory scheme permitted the states to levy only one tax on national and state banking associations in lieu of all other taxes at a rate no higher than the combined rate of tax imposed on other corporations. (*Ibid.*) In 1929, California adopted an in lieu tax on net income and made it applicable to all banks within the state. (Cal. Const., art. XIII, § 27; Rev. & Tax. Code, §§ 23181, 23182.) "The end result was that competing state and national institutions received the same benefits and paid taxes at the same rate." (*Western States Bankcard Assn. v. City and County of San Francisco, supra,* 19 Cal.3d at p. 216.)

In 1979, the Legislature amended Revenue and Taxation Code section 23182 by extending the in lieu income tax to financial corporations. (*California Fed. Savings & Loan Assn. v. City of Los Angeles* (1991) 54 Cal.3d 1, 9 [283 Cal.Rptr. 569, 812 P.2d 916].) A financial corporation predominantly deals with money or moneyed capital in substantial competition with banks. (Cal. Code Regs., tit. 18, § 23183, subd. (a).) The purpose of the amendment was to ensure competitive parity between banks and financial corporations by imposing an equivalent tax burden. (*California Fed. Savings & Loan Assn. v. City of Los Angeles, supra,* 54 Cal.3d at p. 10.) "The amendment to Revenue and Taxation Code Section 23182 contained in this act reaffirms the Legislature's long standing purpose of insuring competitive parity between banks and financial corporations by subjecting both types of institutions to an equivalent tax burden. Equal tax treatment of banks and financial corporations promotes the continued existence of both types of institutions thereby affording a full range of financial services at competitive rates. Moreover, taxation of banks and financial corporations at the rate determined under Revenue and Taxation Code Section 23186 insures that their tax burden will be comparable to the combined state and local tax burdens of nonfinancial corporations subject to Revenue and Taxation Code Section 23151. [¶] The Legislature further finds that divergent and competing local tax measures imposed on financial corporations impair the uniform

statewide regulation of banks and financial corporations. For this reason and those earlier expressed, the Legislature declares that the state, by this amendment, has preempted such local taxation of financial corporations to the same extent as the state has heretofore preempted local taxation of banks." (Stats. 1979, ch. 1150, § 20, p. 4220.)

In short, over the years, the Legislature has attempted to adopt a statutory scheme that achieves a " 'tax rate parity,' between federal and state commercial banks, between commercial banks and financial corporations (including savings banks), and between banks and financial corporations and nonfinancial corporations . . . ." (*California Fed. Savings & Loan Assn. v. City of Los Angeles, supra,* 54 Cal.3d at p. 18.)

■ At the same time as the amendment extending the in lieu income tax to financial corporations, the Legislature mitigated the loss to local governments resulting from the elimination of municipal taxes on financial corporations by establishing a fund for a portion of the revenues paid to the state by financial corporations, which was to be allocated to local governments. (*California Fed. Savings & Loan Assn. v. City of Los Angeles, supra,* 54 Cal.3d at p. 9 & fn. 7.) However, the Legislature did not renew the fund in 1982 or thereafter. (*Ibid.*) Cities do not receive any portion of the increased revenues collected by the state from financial corporations. (*Id.* at pp. 11, 23–24.) Nevertheless, cities may not impose business license taxes in the form of a gross receipts tax on financial corporations. (*Ibid.*)

*State Taxation of Financial Corporations*

■ Except for banks and financial corporations, every corporation doing business in California that is not expressly exempt from taxation must pay a tax to the state based on the corporation's net income at the rate of 8.84 percent. (Rev. & Tax. Code, § 23151.) Banks and financial corporations must pay a tax to the state based on their net income at the rate of 10.84 percent. (Rev. & Tax. Code, §§ 23181, 23183, 23186.) The higher rate of net income tax imposed on banks and financial corporations is "in lieu of all other taxes and licenses, state, county and municipal, upon the said banks and financial corporations except taxes upon their real property, local utility user taxes, sales and use taxes, state energy resources surcharge, state emergency telephone users surcharge, and motor vehicle and other vehicle registration license fees and any other tax or license fee imposed by the state upon vehicles, motor vehicles or the operation thereof." (Rev. & Tax. Code, § 23182.) Revenue and Taxation Code section 23182 prohibits a city from levying a business tax measured by gross receipts on a financial corporation. (*California Fed. Savings & Loan Assn. v. City of Los Angeles, supra,* 54 Cal.3d at pp. 18–25.)

*Limited Liability Companies*

"A limited liability company is a hybrid business entity that combines aspects of both a partnership and a corporation. It is formed under the Corporations Code and consists of 'members' who own membership interests. Members may be individuals, corporations, partnerships, or other limited liability companies. [Citation.] [¶] The company has a legal existence separate from its members. It provides members with limited liability to the same extent enjoyed by corporate shareholders, yet allows members to actively participate in management and control." (9 Witkin, Summary of Cal. Law (2002 supp.) Partnership, § 120, pp. 292–293; Corp. Code, § 17000 et seq.; *Warburton/Buttner v. Superior Court* (2002) 103 Cal.App.4th 1170, 1187–1188 [127 Cal.Rptr.2d 706].)

██ Since 1994, California law has permitted the formation of various quasi-corporate entities, such as limited liability companies, and taxed them as partnerships or corporations depending on the number of their corporate characteristics. (Sen. Rules Com., Off. of Sen. Floor Analyses, Rep. on Sen. Bill No. 1234 (1997–1998 Reg. Sess.) as amended Aug. 25, 1997.) Federal tax law was the same. Then the federal tax law was simplified to permit a limited liability company to elect whether to be classified as a corporation for tax purposes. (*Ibid.*) In 1997, California adopted similar legislation in order to conform California tax law to federal tax law. (*Ibid.*) A limited liability company may elect whether to be classified as a corporation for tax purposes; however, the company must make the same election for federal and state tax purposes. (*Ibid.*)

Revenue and Taxation Code section 23038, subdivision (b)(2)(B) was amended in 1997 to read as follows: "For purposes of the preceding subparagraph, the classification of a business entity (including a business trust) as an association taxable as a corporation (under Chapter 3 (commencing with Section 23501)) shall be determined under regulations of the Franchise Tax Board, which shall be consistent with federal regulations as in effect January 1, 1997, that classify a business entity as a partnership or an association taxable as a corporation or disregard the separate existence of certain business entities for tax purposes. [¶] (ii) The classification of an eligible business entity as a partnership or an association taxable as a corporation for purposes of this part, Part 10 (commencing with Section 17001), and Part 10.2 (commencing with Section 18401) shall be the same as the classification of the entity for federal tax purposes. [¶] (iii) If the separate existence of an eligible business entity is disregarded for federal tax purposes, the separate existence of that business entity shall be disregarded for purposes of this part, Part 10 (commencing with Section 17001), and Part 10.2 (commencing with Section 18401), other than Section 17941 (relating to the

tax of a limited liability company), Section 17942 (relating to the fee of a limited liability company), Section 18633.5 (relating to the return of a limited liability company), and Sections 17039 and 23036 (relating to tax credits)."

 The Franchise Tax Board adopted regulations implementing the legislation. (Cal. Code Regs., tit. 18, § 23038(b).) Under the regulations, unincorporated business entities with a single owner can choose to be recognized or disregarded for tax purposes as an entity separate from their owners. (*Id.*, § 23038(b)-1, subd. (a)(4).) If recognized as an entity separate from its owner for tax purposes, the entity is taxed as a corporation. (*Id.*, § 23038(b)-2, subd. (a).) If disregarded as an entity separate from a corporate parent for tax purposes, the entity's activities are treated in the same manner as a division of its corporate parent. (*Ibid.*) With certain exceptions, an entity disregarded as separate is disregarded for purposes of the Bank and Corporation Tax Law commencing with Revenue and Taxation Code section 23001. (Rev. & Tax. Code, § 23038, subd. (b)(2)(B)(iii).) The enumerated exceptions are: the minimum limited liability company tax (*Id.*, § 17941); the graduated limited liability company fee (*Id.*, § 17942); the requirement to file an information return (*Id.*, § 18633.5); and certain limitations on tax credits (*Id.*, §§ 17039, 23036).

*The City's Gross Receipts Tax*

 The City imposes a business tax on all persons engaged in business within the City. The tax is measured by the gross receipts of the business. Los Angeles Municipal Code section 21.190, subdivision (a) provides: "For every person engaged in any trade, calling, occupation, vocation, profession or other means of livelihood, as an independent contractor and not as an employee of another, and not specifically taxed by other provisions of this article, the tax shall be $106.43 per year or fractional part thereof for the first $18,000.00 or less of gross receipts, plus $5.91 per year for each additional $1,000.00 of gross receipts or fractional part thereof in excess of $18,000.00." A "person" is "any individual, . . . firm, partnership, joint venture, club, company, joint stock company, business trust, domestic or foreign corporation, association, syndicate, society, or any group of individuals acting as a unit . . . ." (L.A. Mun. Code, § 21.00, subd. (d).) The business tax is not enforced against financial corporations. (L.A. Mun. Code, § 21.03,subd. (c).) Except where otherwise prohibited by the state Constitution or state statutes, a city may lawfully impose a business tax based on gross receipts on an entity doing business within the city. (*Weekes v. City of Oakland* (1978) 21 Cal.3d 386, 390–395 [146 Cal.Rptr. 558, 579 P.2d 449].)

*Statutory Interpretation*

"We begin with the touchstone of statutory interpretation, namely, the probable intent of the Legislature. To interpret statutory language, we must 'ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citation.]" (*California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 632 [59 Cal.Rptr.2d 671, 927 P.2d 1175].) " 'Our first step [in determining the Legislature's intent] is to scrutinize the actual words of the statute, giving them a plain and common-sense meaning. [Citations.]' [Citation.]" (*Id.* at p. 633.) " 'In analyzing statutory language, we seek to give meaning to every word and phrase in the statute to accomplish a result consistent with the legislative purpose . . . .' [Citations.]" (*Id.* at p. 634.) " 'The words of the statute must be construed in context, keeping in mind the statutory purpose . . . .' [Citation.]" (*Kane v. Hurley* (1994) 30 Cal.App.4th 859, 862 [35 Cal.Rptr.2d 809].) " ' " 'If the language [of a statute] is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the [Legislature] . . . .' " ' [Citation.]" (*People v. Ramirez* (1995) 33 Cal.App.4th 559, 563 [39 Cal.Rptr.2d 374].)

*Resolving the Issue in This Case*

The City contends that it may impose a business tax on a limited liability company wholly owned by a financial corporation, even though the limited liability company has elected to be disregarded as a separate entity for tax purposes and the limited liability company's net income is subject to tax at a higher rate than other corporations in lieu of other state and local taxes. The City argues that the in lieu tax provisions are expressly applicable only to banks and financial corporations and a limited liability company is not a bank or financial corporation. Thus, the City asserts its valid business tax may be imposed against the gross receipts of a limited liability company. We view the issue as one of statutory interpretation.

■ We start with the propositions that are not in dispute. The City may lawfully impose its gross receipts business tax on limited liability companies doing business within the City, unless otherwise prohibited by the state Constitution or a state statute. ■ The in lieu provisions of Revenue and Taxation Code section 23182 prohibit the City from levying its gross receipts tax on financial corporations. ■ Furman is a limited liability company wholly owned by a financial corporation and has elected to have its separate existence disregarded for tax purposes. As a result of this election, Furman's net income is subject to tax at the higher rate of its parent financial corporation.

The question presented is whether Furman is entitled to the benefit of the in lieu provisions applicable to financial corporations. A careful reading of the relevant statutes convinces us that Furman is entitled to the benefit of the in lieu provisions of Revenue and Taxation Code section 23182. Pursuant to Revenue and Taxation Code section 23038 and the regulations promulgated thereunder, Furman may elect to be disregarded as an entity for tax purposes. If a limited liability company's separate existence is disregarded for tax purposes, the separate existence of the limited liability company is disregarded for purposes of the Bank and Corporation Tax Law. The in lieu provisions of Revenue and Taxation Code section 23182 are part of the Bank and Corporation Tax Law. If a limited liability company is wholly owned by a financial corporation and elects to have its separate existence disregarded for tax purposes, the limited liability company is treated for tax purposes as a division of its parent financial corporation. Its net income is subject to the higher rate of tax imposed on financial corporations. Thus, for purposes of the Bank and Corporation Tax Law, including the in lieu provisions of Revenue and Taxation Code section 23182, Furman's separate existence as a limited liability company is disregarded and the higher rate of tax to which its net income is subject is in lieu of the City's gross receipts business tax.

This conclusion is supported by the clear language of the relevant statutes. It is also supported by the express legislative purpose of adopting a taxation scheme that achieves tax parity between banks, financial corporations, and nonfinancial corporations. Tax parity would not be achieved if a limited liability company were subject to the higher rate of tax imposed on financial corporations and also subject to divergent and competing local tax measures. Our conclusion is also supported by common sense. It is unlikely the Legislature intended to impose the burden of the higher rate of tax on a limited liability company wholly owned by a financial corporation without at the same time affording the limited liability company the benefit of the in lieu provisions.

The City raises two arguments that we address briefly. For the first time on appeal, the City argues that the exceptions to the disregard of a limited liability company's separate existence for tax purposes, permitting the state to impose the minimum limited liability company tax and the graduated limited liability company fee, indicate a legislative intent to permit the City's gross receipts tax. This argument is unavailing. The City did not raise this issue in the trial court and thus may not raise it for the first time on appeal. In addition, there is nothing in the record to inform us as to whether these taxes and fees are in fact imposed on a limited liability company wholly owned by a financial corporation. The City's argument is also unpersuasive. The statute provides that the separate existence of the limited liability company shall be disregarded for tax purposes with four express exceptions. The City's gross receipts business tax is not one of the enumerated exceptions. Had the

Legislature intended to adopt other exceptions to the disregard of the separate existence of the limited liability company for tax purposes, it would certainly have so stated. It could have expressly excepted the in lieu provisions of Revenue and Taxation Code section 23182. It did not do so.

Second, relying on *Western States Bankcard Assn. v. City and County of San Francisco, supra,* 19 Cal.3d 208, the City argues that Furman is not a financial corporation and thus the in lieu provisions of Revenue and Taxation Code section 23182 are not applicable. As we have seen, by virtue of Revenue and Taxation Code section 23038 and the regulations promulgated thereunder, the in lieu provisions of Revenue and Taxation Code section 23182 are applicable to Furman. Thus, *Western States Bankcard* is inapposite. In *Western States Bankcard,* a nonprofit corporation organized by a number of banking associations to administer their credit cards claimed exemption from a city gross receipts business tax on the ground of the in lieu provisions applicable to banks. The Supreme Court concluded that the nonprofit corporation was not entitled to the benefit of the bank in lieu provisions. The Supreme Court noted that the nonprofit corporation was not subject to the higher rate of tax. Here, Furman is subject to the higher rate of tax and is by statute accorded the benefit of the in lieu provisions.

## DISPOSITION

The judgment is affirmed. Furman Selz Capital Management, L.L.C., is awarded its costs on appeal.

Turner, P. J., and Mosk, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 10, 2004.