Filed 10/24/18 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| BUNZL DISTRIBUTION USA, INC.,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>FRANCHISE TAX BOARD,<br><br>     Defendant and Respondent. | A137887<br><br>(City & County of San Francisco<br>Super. Ct. No. CGC-10-506344)<br><br>ORDER MODIFYING OPINION;<br>NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on September 28, 2018, be modified as follows:

1. On page 1, the second sentence of the first paragraph, "Bunzl contends the judgment must be reversed because the FTB should have excluded income from Bunzl's LLC's in calculating its California tax liability under UDITPA," is modified to read as follows:

    Bunzl contends the judgment must be reversed because the FTB should have excluded property, payroll, and sales factors from Bunzl's LLC's in calculating its California tax liability under UDITPA.

2. On page 6, the second and third sentences of the first full paragraph, beginning "In doing so, Bunzl excluded the income of its single member LLC's" and ending "thereby reducing the amount of Bunzl's income that was apportionable to California," are modified to read as follows:

    In doing so, Bunzl excluded the property, payroll, and sales factors of its single member LLC's from the numerator of the apportionment formula

1

on the basis that it had already paid California a tax and fee for those LLC's under section 18633.5. Excluding the property, payroll, and sales factors of the six single member LLC's from the numerator of the apportionment formula drastically decreased the overall apportionment ratio, thereby reducing the amount of Bunzl's income that was apportionable to California.

3. On page 6, the first and second sentences of the last full paragraph, beginning "The FTB rejected Bunzl's approach" and ending "boosted Bunzl's California income tax liability under UDITPA to slightly more than $1.4 million," are modified to read as follows:

> The FTB rejected Bunzl's approach and found that the property, payroll, and sales factors of the six single member LLC's should have been included in the numerator of the UDITPA apportionment formula. Including the property, payroll, and sales factors of the six LLC's in the numerator of the apportionment formula boosted Bunzl's California income tax liability under UDITPA to slightly more than $1.4 million.

4. On page 7, the second sentence of the second full paragraph, beginning "Bunzl's argument appears to be twofold" and ending "could be included in the apportionment formula," is modified to read as follows:

> Bunzl's argument appears to be twofold: (1) because its LLC's paid the requisite fees and taxes under section 18633.5, the LLC's property, payroll, and sales factors should have been excluded from UDITPA's apportionment formula; and (2) because the owners of the LLC's did not do any business in California apart from the LLC's, they had no property, payroll, and sales factors attributable to California that could be included in the apportionment formula.

5. On page 7, the first sentence of the third full paragraph, "Bunzl first argues that section 18633.5 constitutes an 'alternative' taxation scheme that allows an otherwise disregarded single member LLC to be taxed for all purposes as a

2

separate, stand-alone entity, so that its income is removed from the apportionment formula of UDITPA, even if it is part of a unitary business," is modified to read as follows:

> Bunzl first argues that section 18633.5 constitutes an "alternative" taxation scheme that allows an otherwise disregarded single member LLC to be taxed for all purposes as a separate, stand-alone entity, so that the LLC's property, payroll, and sales factors are removed from the apportionment formula of UDITPA, even if it is part of a unitary business.

There is no change in the judgment.

Dated: <u>October 24, 2018</u>          <u>Jenkins, J._____</u> Acting P. J.

A137887/*Bunzl Distribution USA, Inc. v. Franchise Tax Bd.*

3

A137887/Bunzl Distribution USA, Inc. v. Franchise Tax Bd.

Trial Court:  San Francisco Superior Court

Trial Judge:  Marla J. Miller

Counsel:  Reeder Wilson LLP, Kimberley M. Reeder and Margaret C. Wilson; Law Office of Kimberley M. Reeder and Kimberley M. Reeder; Morgan Lewis & Bockius LLP, Thomas M. Peterson and William B. Clayton for Appellant.

Silverstein & Pomerantz LLP, Amy L. Silverstein and Edwin P. Antolin for California Taxpayers Association, as Amicus Curiae on behalf of Appellant.

Kamala D. Harris and Xavier Becerra, Attorneys General, Paul D. Gifford, Senior Assistant Attorney General, Joyce E. Hee, Supervising Deputy Attorney General, and Karen W. Yiu, Deputy Attorney General, for Respondent.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| BUNZL DISTRIBUTION USA, INC.,<br><br>      Plaintiff and Appellant,<br><br>v.<br><br>FRANCHISE TAX BOARD,<br><br>      Defendant and Respondent. | A137887<br><br>(City & County of San Francisco<br>Super. Ct. No. CGC-10-506344) |

Plaintiff Bunzl Distribution USA, Inc. (Bunzl), a multinational entity comprised of numerous subsidiary corporations and limited liability companies (LLC), appeals from the trial court's judgment upholding defendant Franchise Tax Board's (FTB) determination that Bunzl owed $1,403,595 in taxes to the State of California for the year 2005 under the Uniform Division of Income for Tax Purposes Act (UDITPA) (Rev. & Tax. Code, § 25120 et seq.).[1] Bunzl contends the judgment must be reversed because the FTB should have excluded income from Bunzl's LLC's in calculating its California tax liability under UDITPA. We reject Bunzl's contention and affirm the judgment.

## I. BACKGROUND

### A. UDITPA

The United States Constitution prohibits states from taxing income earned outside their borders. (*Container Corp. v. Franchise Tax Bd.* (1983) 463 U.S. 159, 164 (*Container Corp.*).) "However, it permits taxation of 'an apportionable share of the

---

[1] All further, undesignated statutory references are to the Revenue and Taxation Code.

1

multistate business carried on . . . in the taxing State' [citation] and grants states some leeway in separating out their respective shares of this multistate income, not mandating they use any particular formula [citation]." (*Microsoft Corp. v. Franchise Tax Bd.* (2006) 39 Cal.4th 750, 755 (*Microsoft Corp.*).)

The District of Columbia and 22 states including California have adopted UDITPA, which sets forth an apportionment formula for states to use when taxing entities that do business both inside and outside the states' borders. (*Microsoft Corp.*, *supra*, 39 Cal.4th at p. 755; §§ 25121, 25101.) UDITPA seeks to establish uniform rules for the attribution of corporate income that are "equitable to the taxpayer, who in the absence of uniform rules faces the prospect of having the same income taxed by two, three, or more different states." (*Microsoft Corp.*, at p. 755) UDITPA provides that if the taxpayer, invariably a foreign corporation or other entity, is part of a "unitary business," it is required to "allocate and apportion its net income as provided in [UDITPA]." (§ 25121.)

UDITPA does not define the term "unitary business," likely because it had a recognized meaning in California long before the state adopted UDITPA. (See, e.g., *Gorham Mfg. Co. v. Tax Comm.* (1924) 266 U.S. 265, 270; *Bass, Etc., Ltd. v. Tax Comm.* (1924) 266 U.S. 271, 282.) " 'A unitary business is generally defined as two or more business entities that are commonly owned and integrated in a way that transfers value among the affiliated entities.' " (*General Motors Corp. v. Franchise Tax Bd.* (2006) 39 Cal.4th 773, 779, fn. 3.) There are four defining features of a unitary business: (1) unity of ownership; (2) unity of operations, as evidenced by central accounting, purchasing, advertising, and management divisions; (3) unity of use in a centralized executive force and general system of operation; and (4) the operation of the business done within California is dependent upon or contributes to the operation of the entirety of the taxpayer's operations. (See, e.g., *Edison California Stores v. McColgan* (1947) 30 Cal.2d 472, 479–481.)

Under UDITPA's apportionment formula, "[t]he portion of a taxpayer's business income attributable to economic activity in a given state is determined by combining

2

three factors:  payroll, property, and sales.  (§ 25128.)  Each factor is a fraction in which the numerator measures activity or assets within a given state, while the denominator includes all activities or assets anywhere.  (§§ 25129, 25132, 25134.)  The combination of these fractions is used to determine the fraction of total global business income attributable to the given state." (*Microsoft Corp.*, *supra*, 39 Cal.4th at p. 756.)[2]

Throughout the years since California adopted UDITPA, and ever since its constitutionality was upheld (*Matson Nav. Co. v. State Bd. of Equalization* (1935) 3 Cal.2d 1, affd. (1936) 297 U.S. 441), businesses have used various strategies in attempting to evade or reduce their tax liability under UDITPA.  They have been largely unsuccessful.  (See, e.g., *Exxon Corp. v. Wisconsin Dept. of Revenue* (1980) 447 U.S. 207, 221–223 [a company may not use internal accounting to remove income from the apportionment formula]; *Scripto v. Carson* (1960) 362 U.S. 207, 211 ["To permit such formal 'contractual shifts' to make a constitutional difference would open the gates to a stampede of tax avoidance"].)  As the United States Supreme Court observed:  "To permit the true nature of a transaction to be disguised by mere formalisms, which exist solely to alter tax liabilities, would seriously impair the effective administration of the tax policies of Congress." (*Commissioner v. Court Holding Co*. (1945) 324 U.S. 331, 334.) California courts are in accord.  (*W.E. Hall Co. v. Franchise Tax Bd*. (1968) 260 Cal.App.2d 179, 183.)

### B. Bunzl

Bunzl is a Delaware corporation that describes itself on its website as follows: "Bunzl Distribution USA, Inc. supplies a range of products including outsourced food

---

[2] Expressed as a mathematical equation, the current version looks like this:

$$\frac{\dfrac{\text{CA Property}}{\text{Total Property}} + \dfrac{\text{CA Payroll}}{\text{Total Payroll}} + 2 \times \dfrac{\text{CA Sales}}{\text{Total Sales}}}{4} \times \text{Total Income} = \text{Taxable Income}$$

(§ 25128, subd. (a).)

packaging, disposable supplies, and cleaning and safety products to food processors, supermarkets, non-food retailers, convenience stores and other users.  Based in St. Louis, Missouri, Bunzl Distribution is the largest division of Bunzl plc, an international distribution and outsourcing group headquartered in London. [¶] Bunzl Distribution owns and operates more than 100 warehouses that serve all 50 states and Puerto Rico, as well as Canada, the Caribbean and parts of Mexico.  With more than 5,000 employees and 400,000-plus supply items, Bunzl is regarded as a leading supplier in North America.  Worldwide sales are in excess of $10 billion."

(<http://www.bunzldistribution.com/aboutBunzl/default.asp> [as of Sept. 26, 2018].)

Bunzl concedes it is a unitary business under UDITPA.  It has organized its affairs in the United States using a number of corporations and LLC's[3] in order "to allow the company to achieve standardization in management reporting for its distribution centers and allow the greatest amount of flexibility."  Bunzl has two wholly owned corporate subsidiaries, Bunzl Western Holdings, Inc. (Bunzl Western) and Bunzl Distribution Midcentral, Inc. (Bunzl Midcentral), both Missouri corporations.  Relevant here are six LLC's that are each owned by a single entity—Bunzl, Bunzl Western, or Bunzl Midcentral.  These LLC's, known as "single member" LLC's, are:  (1) TSN West, LLC; (2) Bunzl Distribution California, LLC; (3) Bunzl Utah, LLC; (4) Packers Engineering and Equipment, LLC; (5) Bunzl Midatlantic, LLC; and (6) Bunzl Distribution Northeast, LLC.

Single member LLC's may elect to be taxed as a corporation.  Upon such an election, the LLC is taxed as a separate entity from its owner.  (*City of Los Angeles v. Furman Selz Capital Management* (2004) 121 Cal.App.4th 505, 513.)  However, where

---

[3] An LLC is a hybrid business entity that combines aspects of both a partnership and a corporation.  It consists of members, which can be individuals, corporations, partnerships, or other LLC's.  The company has a legal existence separate from its members and provides members with limited liability to the same extent shared by corporate shareholders, yet allows members to actively participate in management and control.  (See, e.g., 9 Witkin, Summary of Cal. Law (11th ed. 2017) Partnership, §§ 142–144, 156–157, 165–167, pp. 713–716, 726–729, 734–735.)

4

an LLC does not elect to be taxed as a corporation, it is treated as part of its owner for tax purposes.  (*Id.* at pp. 513–514.)  In other words, where an LLC elects not to be taxed as a corporation, its status as a separate entity is "disregarded" for income tax purposes, and it is taxed as part of its owner.

In 2005—the taxable year at issue in this case—none of Bunzl's single member LLC's elected to be taxed as corporations, and all were therefore considered disregarded entities for income tax purposes.  That year, each of those LLC's filed a return under section 18633.5, subdivision (a), which provides that every LLC doing business in California must file a "return."  In addition, as disregarded entities, each LLC was subject to section 18633.5, subdivision (i), which requires disregarded LLC's to file a return that includes information necessary to verify its liability under sections 17941, which charges a "tax" of at least $25 "for the privilege of doing business in this state," and 17942, which charges a "fee" of at least $900 depending on "the total income from all sources derived from or attributable to" this state.  (§ 18633.5, subd. (i)(1).)  Section 18633.5 further mandates that a disregarded LLC must provide its sole owner's name and taxpayer identification number and include the consent of the owner to California tax jurisdiction.  (*Ibid.*)  "If the owner's consent [to California tax jurisdiction] is not included [in the return], the [LLC] shall pay on behalf of its owner an amount [specified in subdivision (e)]."  (*Id.*, subd. (i)(2).)  In accord with these provisions, Bunzl's six single member LLC's provided the necessary information in their returns.  And, when the single member owners of the LLC's declined to consent to California tax jurisdiction,[4] the LLC's reported their collective income and paid a total of $244,502 on behalf of their owners under section 18633.5.

Bunzl then calculated its California tax liability under UDITPA's apportionment formula.  In doing so, Bunzl excluded the income of its single member LLC's from the

---

[4] The filing of a consent simply "facilitates California taxation of income attributable to California sources."  (*Valentino v. Franchise Tax Bd.* (2001) 87 Cal.App.4th 1284, 1294 & fn. 11.)  The lack of consent does not deprive California of its tax jurisdiction.  (*Ibid.*)

numerator of the apportionment formula on the basis that it had already paid California a tax and fee for those LLC's under section 18633.5. Excluding the income of the six single member LLC's from the numerator of the apportionment formula drastically decreased the overall apportionment ratio, thereby reducing the amount of Bunzl's income that was apportionable to California. Bunzl reported an overall California apportionment factor/ratio of 0.0131 percent and multiplied this factor by $193,908,364—Bunzl's combined report net income for the year—concluding that only $25,402 of its income was attributable to, and therefore taxable in, California. Accordingly, Bunzl paid $2,246 in California income tax liability for the year 2005 under UDITPA.

The FTB rejected Bunzl's approach and found that the income of the six single member LLC's should have been included in the numerator of the UDITPA apportionment formula. Including the income of the six LLC's in the numerator of the apportionment formula boosted Bunzl's California income tax liability under UDITPA to slightly more than $1.4 million. Deducting the $244,502 already paid by the LLC's under section 18633.5, the FTB assessed Bunzl $1,159,093. Bunzl paid this amount plus interest, exhausted its administrative remedies to get it refunded, and commenced this action.[5]

After the trial court granted the FTB's motion for summary adjudication of Bunzl's causes of action for refund, Bunzl elected not to proceed with its remaining causes of action in order to expedite appellate review. To that end, Bunzl and the FTB stipulated to entry of the judgment, and Bunzl timely appealed.

---

[5] In commencing this action, Bunzl not only sought a refund, but also claimed the FTB engaged in unfair settlement practices by adopting "artificial settlement constructs" that "result in corporate taxpayers conceding a significantly larger percentage of the amount in dispute . . . than individuals." On appeal, Bunzl raises this and other claims relating to settlement and discovery but concedes it has no interest in pursuing them if it loses on its substantive claim for a refund. In light of our conclusion that Bunzl was not entitled to a refund, we need not—and therefore will not—address the additional claims.

6

## II. DISCUSSION

### A. Bunzl's Argument

Bunzl's essential argument can be summarized as follows: Where the nonresident corporate owner of a single member, disregarded LLC declines to consent to California tax jurisdiction, and the LLC files a return and pays a tax and fee under section 18633.5, the LLC becomes a separate, "stand-alone" entity that is no longer treated as part of its owner for income tax purposes. Bunzl's argument appears to be twofold: (1) because its LLC's paid the requisite fees and taxes under section 18633.5, its income should have been excluded from UDITPA's apportionment formula; and (2) because the owners of the LLC's did not do any business in California apart from the LLC's, they had no income attributable to California that could be included in the apportionment formula. We reject Bunzl's argument. The plain language of section 18633.5 and its legislative history show that the statute was limited in scope and was not intended to reduce the tax liability of disregarded single member LLC's that are part of a unitary business.

Bunzl first argues that section 18633.5 constitutes an "alternative" taxation scheme that allows an otherwise disregarded single member LLC to be taxed for all purposes as a separate, stand-alone entity, so that its income is removed from the apportionment formula of UDITPA, even if it is part of a unitary business. There is, however, nothing in the language of section 18633.5 that suggests the statute was meant to replace the well-established apportionment principles set forth in UDITPA.

Instead, section 18633.5 merely provides that a disregarded LLC must pay a certain tax and fee on behalf of its owner when its owner declines to consent to California tax jurisdiction. (§ 18633.5, subd. (i)(2).) It does not state that an owner is absolved of all other tax liability so long as the LLC pays that tax and fee on the owner's behalf. In fact, the statute presumes the owner will be responsible for paying taxes separate and aside from what is required under the section. Subdivision (g) provides: "Any amount paid by the [LLC] to this state pursuant to [this section] shall be considered to be a payment by the member *on account of the income tax imposed by this state on the member for the taxable period*." (Italics added.) In other words, the tax and fee an LLC

7

pays under section 18633.5 is to be credited against its owner's separate tax liability. This supports our conclusion that section 18633.5 did not replace other tax-assessing statutes such as UDITPA.

Further, although the disregarded LLC can be viewed as a separate entity for the limited purpose of paying the tax and fee required by section 18633.5, the statute does not state that the LLC is to be treated as a separate entity for *all* purposes, including income tax purposes. California Code of Regulations, title 18, section 23038(b)-1, subdivision (a)(4), supports our conclusion that section 18633.5 was not intended to treat the LLC's as separate entities for all purposes. The regulation provides that single member LLC's "can choose to be recognized or disregarded as entities separate from their owners, subject to certain statutory provisions which recognize the existence of otherwise disregarded entities *for certain purposes* including the tax and fee of [an LLC] under Sections 17941 and 17942 . . . , the return filing requirements of [an LLC] under Section 18633.5 . . . , and the credit limitations of a disregarded entity under Sections 17039 and 23036 . . . ." (Italics added; see also § 23038 [a disregarded LLC can be treated as a separate entity under four limited circumstances, including for the purpose of section 18633.5].) In other words, a single member LLC that elects to be considered a disregarded entity will be treated as a separate entity for "certain purposes" only, including for the purpose of paying a tax and fee under sections 18633.5, 17941 and 17942.

Recent California authority also supports our conclusion. The Court of Appeal in *City of Los Angeles v. Furman Selz Capital Management*, *supra*, 121 Cal.App.4th at pages 516 to 517, declined to treat a disregarded LLC as a separate entity from its owner for income tax purposes. The court observed: "Had the Legislature intended to adopt other exceptions to the disregard of the separate existence of the [LLC] for tax purposes, it would certainly have so stated. . . . It did not do so." Similarly, we observe that if the Legislature had intended for section 18633.5 to immunize a single member LLC or the owner of the LLC from the standard apportionment and tax rules of UDITPA, it would have so provided. It did not.

Bunzl next argues that the legislative history of section 18633.5, as well as section 23038[6]—which incorporates section 18633.5 by reference—supports its position that the Legislature intended to remove the income of "stand-alone" LLC's from the apportionment formula of UDITPA.  We disagree.

The bill analyses on which Bunzl relies show the Legislature amended sections 18633.5 and 23038 simply to bring California into conformity with the federal practice of allowing LLC's to elect whether to be taxed as a corporation.  The bill passed without a dissenting vote in both the Senate and the Assembly.  (Sen. Bill No. 1234 (1997–1998 Reg. Sess.) Complete Bill Hist., p. 1.)  The appropriations committee for each chamber evaluated the measure as essentially revenue-neutral (see Sen. Com. on Appropriations, fiscal summary of Sen. Bill No. 1234 (1997–1998 Reg. Sess.) as amended May 1, 1997, pp. 1–2 ["FTB estimates . . . relatively little net revenue effect"]; Assem. Com. on Appropriations, Rep. on Sen. Bill No. 1234 (1997–1998 Reg. Sess.) as amended Aug. 25, 1997, p. 1 ["the [FTB] stated this bill would not significantly impact personal income tax or bank and corporation tax revenues" and would "result[] in minor net revenue effect"]), as did the revenue and taxation committees.  (See Sen. Com. on Rev. & Tax., 3d reading analysis of Sen. Bill No. 1234 (1997–1998 Reg. Sess.) as amended Aug. 25, 1997, p. 2 ["<u>FISCAL EFFECT</u>: Minor"]; Assem. Com. on Rev. & Tax., Rep. on Sen. Bill No. 1234 (1997–1998 Reg. Sess.) as amended July 11, 1997, p. 2 [same]; Sen. Com. on Rev. & Tax., Rep. on Sen. Bill No. 1234 (1997–1998 Reg. Sess.) as amended May 1, 1997, p. 2 ["FISCAL EFFECT: [¶] None"].)  These references reveal that the Legislature expected relatively minor revenue loss from the amendments to the statutes upon which Bunzl relies.  Moreover, the comments accompanying the amendments to these statutes support our conclusion that the

---

[6] Section 23038 provides in relevant part:  "If the separate existence of an eligible business entity is disregarded for federal tax purposes, the separate existence of that business entity shall be disregarded for purposes of this part, Part 10 . . . , and Part 10.2 . . . , other than Section 17941 (relating to the tax of [an LLC]), Section 17942 (relating to the fee of [an LLC]), Section 18633.5 (relating to the return of [an LLC]), and Sections 17039 and 23036 (relating to tax credits)."  (§ 23038, subd. (b)(2)(B)(iii).)

Legislature, in amending the statutes, did not intend for a unitary business to significantly reduce its tax liability absent a "change in the underlying economic realities" of its business. (*Mobil Oil Corp. v. Commissioner of Taxes* (1980) 445 U.S. 425, 441.)

We also find it significant that the terms "UDITPA," "unitary business," and "interstate taxation" are not mentioned anywhere in the numerous committee reports and bill analyses. Courts are reluctant to accept that legislatures enact important or fundamental changes by silent indirection. (See, e.g., *California Cannabis Coalition v. City of Upland* (2017) 3 Cal.5th 924, 940; *California Redevelopment Assn. v. Matosantos* (2011) 53 Cal.4th 231, 260–261.)

Simply put, we find nothing in the legislative history of sections 18633.5 and 23038 that supports Bunzl's view that the Legislature intended for the amendments to these sections to alter the rules of apportionment for unitary businesses with single member LLCs. Because section 18633.5 does not replace the apportionment formula of UDITPA, Bunzl should have included the property, payroll, and sales of its single member LLC's in the numerators of its combined reporting group's apportionment factors.

### B. Bunzl's Additional Arguments

Joined by the California Taxpayers Association as amicus curiae, Bunzl argues that the owners of the single member LLC's "do not have [a] nexus with California" and therefore are beyond the state's taxing power. Bunzl relies in part on *Swart Enterprises, Inc. v. Franchise Tax Bd.* (2017) 7 Cal.App.5th 497, but the case is distinguishable. There, the Court of Appeal held that an out-of-state corporation was not doing business in California and was therefore not subject to an $800 minimum franchise tax because the corporation's only connection to California was its passive ownership of a 0.2-percent membership interest in a California LLC. (*Id.* at p. 504.)

Here, in contrast, there is substantial nexus because Bunzl, Bunzl Western, and Bunzl Midcentral are 100-percent owners of LLC's that conduct significant business in California. Moreover, as discussed above, because the LLC's in this case are part of a unitary enterprise, Bunzl, Bunzl Western, and Bunzl Midcentral cannot remove

10

themselves from the reach of UDITPA simply by filing returns and paying taxes and fees under sections 18633.5, 17941, and 17942.[7]

In a similar vein, Bunzl suggests through a few references in its opening brief that it is the victim of double taxation, raising the specter that California is exceeding its proper territorial jurisdiction. For example, Bunzl argues: "Limitations imposed by the 'Due Process and Commerce Clauses . . . do not allow a State to tax income arising out of interstate activities—even on a proportional basis—unless there is a "minimal connection" or "nexus" between the interstate activities and the taxing State, and a rational relationship between the income attributed to the State and the intrastate values of the enterprise.' [Citation.]" Bunzl argues: "This case involves an attempt to tax a legal entity's California income twice . . . ." We reject Bunzl's suggestion that it is a victim of double taxation.

Preliminarily, we note the double taxation issue is not sufficiently raised in Bunzl's opening brief. Isolated references in a brief do not constitute a cognizable argument. Under identifying headings, "a brief must contain ' "meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error" ' and contain adequate record citations, or else we will deem all points 'to be forfeited as unsupported by "adequate factual or legal analysis." ' " (*Fernandes v. Singh* (2017) 16 Cal.App.5th 932, 942–943; Cal. Rules of Court, rule 8.204(a)(1)(B)–(C).)

---

[7] To the extent Bunzl is claiming that the owners of its LLC's should not have been required to pay California taxes because they declined to consent to California tax jurisdiction, the claim is meritless. Bunzl presents no relevant authority to support its position that an LLC owner can, simply by withholding consent, deprive California of its jurisdiction to tax the portion of a business's income that is generated from California sources. As noted, the jurisdiction to tax is not dependent upon a taxpayer's consent. (*Valentino v. Franchise Tax Bd.*, *supra*, 87 Cal.App.4th at p. 1293.) While the filing of a consent "facilitates California taxation of income attributable to California sources," the lack of consent does not deprive California of its tax jurisdiction. (*Id*. at p. 1294 & fn. 11.)

11

In addition, it was not until the reply brief that the issue appeared in slightly more developed form, but still without constitutional underpinnings.  Because the issue was not adequately raised, we need not address it further.  (See, e.g., *People v. Tully* (2012) 54 Cal.4th 952, 1075; *Garcia v. McCutchen* (1997) 16 Cal.4th 469, 482, fn. 10; 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 723, p. 790.)[8]

In any event, the argument fails on the merits.  The United States Supreme Court and the California Supreme Court impose strict requirements for such a claim to succeed.  "[T]he taxpayer has the ' "distinct burden of showing by 'clear and cogent evidence' that [the state tax] results in extraterritorial values being taxed . . . ." ' " (*Container Corp.*, *supra*, 463 U.S. at p. 164, quoting *Butler Brothers v. McColgan* (1942) 315 U.S. 501, 507; accord, *Barclays Bank Internat., Ltd. v. Franchise Tax Bd.* (1992) 2 Cal.4th 708, 720; *Butler Brothers v. McColgan* (1941) 17 Cal.2d 664, 667.)  That burden is only increased because one of UDITPA's purposes is to avoid double taxation.  (See *The Gillette Co. v. Franchise Tax Bd.* (2015) 62 Cal.4th 468, 484–485.)  Bunzl makes no showing that what it does inside California is unrelated to its operations outside California (see *Allied-Signal, Inc. v. Director, Div. of Taxation* (1992) 504 U.S. 768, 772–773, 777–778; *Hoechst Celanese Corp. v. Franchise Tax Bd.* (2001) 25 Cal.4th 508, 538), which is hardly surprising in light of its acknowledgement that it is a unitary business.

Finally, Bunzl suggests that section 18633.5 and its effect on UDITPA is ambiguous, and that the California Supreme Court has declared that statutory ambiguities should be resolved in favor of the taxpayer.  (Citing, e.g., *Agnew v. State Bd. of*

---

[8] Nor can it be raised for the first time by amicus.  " '[A]n amicus curiae must accept the case as it finds it and . . . "friend of the court" cannot launch out upon a juridical expedition of its own . . . .  "[The] rule is universally recognized that an appellate court will consider only those questions properly raised by the appealing parties.  Amicus curiae must accept the issues made and propositions urged by the appealing parties, and any additional questions presented in a brief filed by an amicus curiae will not be considered . . . ." ' " (*Younger v. State of California* (1982) 137 Cal.App.3d 806, 813–814.)

*Equalization* (1999) 21 Cal.4th 310.) In light of the fact that section 18633.5 contains no reference to UDITPA, it is more appropriate to view Bunzl as arguing that its LLC's are not covered by UDITPA, i.e., that Bunzl is claiming an exemption from UDITPA. As a matter of state law, "it is the rule that exemptions are construed liberally in favor of the taxing authority and strictly against the taxpayer." (*Beatrice Co. v. State Bd. of Equalization* (1993) 6 Cal.4th 767, 775.) As we discussed above, paying a tax and fee as a disregarded entity under section 18633.5 does not exempt a single member LLC from unitary business taxation under UDITPA.

## DISPOSITION

The judgment is affirmed. The parties shall bear their own costs on appeal.

13

14

_____

Jenkins, J.

We concur:

_____

Siggins, P. J.

_____

Pollak, J.

A137887/*Bunzl Distribution USA, Inc. v. Franchise Tax Bd.*

A137887/Bunzl Distribution USA, Inc. v. Franchise Tax Bd.

Trial Court:  San Francisco Superior Court

Trial Judge:  Marla J. Miller

Counsel:  Reeder Wilson LLP, Kimberley M. Reeder and Margaret C. Wilson; Law Office of Kimberley M. Reeder and Kimberley M. Reeder; Morgan Lewis & Bockius LLP, Thomas M. Peterson and William B. Clayton for Appellant.

Silverstein & Pomerantz LLP, Amy L. Silverstein and Edwin P. Antolin for California Taxpayers Association, as Amicus Curiae on behalf of Appellant.

Kamala D. Harris and Xavier Becerra, Attorneys General, Paul D. Gifford, Senior Assistant Attorney General, Joyce E. Hee, Supervising Deputy Attorney General, and Karen W. Yiu, Deputy Attorney General, for Respondent.

15